UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIORITY RECORDS, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>ANTHONY MARINARO,<br><br>        Defendant.<br>_____/ | No. C-05-1748 JSW (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>**(Docket No. 15)** |

## I.  FACTUAL & PROCEDURAL BACKGROUND

On October 10, 2005, Plaintiffs Priority Records LLC, Sony BMG Music Entertainment, Virgin Records America, Inc., Elektra Entertainment Group, Inc., Capitol Records, Inc., Warner Bros. Records, Inc., and UMB Recordings, Inc. ("Plaintiffs") moved for default judgment against Defendant, Anthony Marinaro. The Clerk of the Court entered default on July 8, 2005. Plaintiffs' Complaint pleads injunctive relief for copyright infringement and alleges statutory damages and costs totaling $6,403.00.

Having considered Plaintiffs' brief and supporting documents, the Court hereby issues the following report and recommends that Plaintiffs' motion for default judgment be granted.

## II.  DISCUSSION

On April 26, 2005, Plaintiffs filed a complaint against Defendant for copyright infringement, citing generally to provisions under the Copyright Act. *See* Pl.'s Compl. ¶ 1 (April 26, 2005). In its Complaint, Plaintiffs allege that they are all copyright owners or licensees of exclusive rights under United States copyright with respect to certain copyrighted sound recordings ("Copyrighted

Recordings"). *Id.* at ¶ 13. Among the exclusive rights granted to each Plaintiff under the Copyright Act are those associated with the reproduction and distribution of Copyrighted Recordings to the public. *Id*. at ¶ 15. Plaintiffs claim that Defendant violated these rights by willfully using and continuing to use an online media distribution system to download, distribute, and/or make available for distribution Copyrighted Recordings. *See id*. at ¶¶ 15, 16. Specifically, they allege that Defendant infringed their rights over eight copyrighted sound recordings identified in Exhibit A as well as some listed in Exhibit B, which are owned or exclusively licensed to one or more of Plaintiffs or their affiliate's record labels. *Id*. at ¶ 13, Ex. A, and Ex. B. In the prayer for relief, Plaintiffs seek a total of $6,000.00 in minimum statutory damages under Section 504 of the Copyright Act; an injunction pursuant to Section 502 of the Copyright Act; and costs in the amount of $403.00 under Section 505 of the Copyright Act. *See* Pl.'s Applic. for Entry of Default Judgment at ¶ 4 (October 10, 2005). Plaintiffs ask for an injunction as they believe there is "no adequate remedy at law" and, unless enjoined, Defendant would continue to cause "great and irreparable injury" that could not be fully compensated. *See* Pl.'s Compl. ¶ 18.

Plaintiffs' Proof of Service states that, on April 27, 2005, Defendant was served with a Summons and Complaint by personal delivery at his residence located at 1040 7th Street, Apt. B, Novato, California. *See* Summons (Docket No. 4). Having not received a timely response from Defendant, Plaintiffs subsequently filed for a request to enter default and notified Defendant via U.S. Mail on July 6, 2005. *See* Certificate of Service (Docket No. 9). The Clerk of the Court entered default two days later. Plaintiffs further notified Defendant of application for entry of default judgment via U.S. Mail on October 10, 2005. *See* Certificate of Service (Docket No. 18).

A.     <u>Adequacy of Service of Process</u>

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Rule 4(e) authorizes service upon an individual within a judicial district: "Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the

1 United States: (1) pursuant to the law of the state in which the district court is located..." Fed. R.
2 Civ. Proc. 4(e)(1). As such, where a waiver has not been obtained and Defendant is neither an infant
3 nor incompetent person, the California Code of Civil Procedure governs the proper method of
4 delivery. Section 415.10 of the California Code of Civil Procedure declares that a "summons may
5 be served by personal delivery of a copy of the Summons and of the Complaint to the person to be
6 served. Service of summons in this manner is deemed complete at the time of such delivery." Cal.
7 Code Civ. Proc. § 415.10.

8 On April 27, 2005, Defendant was served with the Summons and Complaint by personal
9 delivery at his residence which is in Novato, California. *See* Summons (Docket No. 4). Plaintiffs
10 have not alleged in their Complaint that they obtained a waiver from Defendant. In addition,
11 Plaintiffs' counsel has declared that Defendant is not an infant, incompetent person, nor in military
12 service. *See* Sheila M. Salomon Decl. in Support of Application for Default Judgment ¶¶ 4, 5
13 (October, 10, 2005). Hence, under Federal Rule of Civil Procedure 4 and California Code of Civil
14 Procedure Section 415.10, service of process via personal delivery to Defendant was properly
15 effected.

16 B.     Entry for Default Judgment/ Personal and Subject Matter Jurisdiction

17 Defendant has not filed an Answer nor otherwise appeared in the action. Salomon Decl. in
18 Support of Applic. for Entry of Default Judgment, at ¶ 4. Given Defendant's absence and the
19 allegation by Plaintiffs that Defendant is not an infant, incompetent person, nor in the military
20 service, the entry of default judgment by the Court was proper. Furthermore, since all allegations
21 are taken as true on motions for default judgment, Plaintiffs' claims regarding Defendant's residence
22 in the District and his acts of infringement that violate the Copyright Act provide the Court with
23 personal jurisdiction as well as subject matter jurisdiction. *See* Pl.'s Compl. ¶ 3.

24 C.     Default Judgment and the *Eitel* Factors

25 After entry of default judgment, a court may grant a default judgment on the merits of the
26 case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a
27 discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors which inform
28 the exercise of discretion as to the entry of a default judgment include: (1) the possibility of

3

1  prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the
2  complaint; (4) the sum of the money at stake in the action; (5) the possibility of a dispute concerning
3  material facts; (6) whether the default was due to excusable neglect; and (7) the strong public policy
4  underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*,
5  782 F.2d 1470, 1471-72 (9th Cir. 1986). Since, as noted above, default has already been entered in
6  this case, the Court must take as true all factual allegations in Plaintiffs' complaint except for those
7  related to the amount of damages. *See Televideo Sys., Inc. v. Hidenthal*, 826 F.2d 915, 917-18 (9th
8  Cir. 1987).

9      1.    <u>The Possibility of Prejudice to Plaintiffs</u>

10      The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment
11  is not entered." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). This
12  Court has found such prejudice when the denial of the default judgment would have left the Plaintiff
13  "without other recourse for recovery." *See Webb v. Indigenous Global Dev. Corp.*, 2005 WL
14  1200203, at *3 (N.D. Cal. May 16, 2005). In the case at bar, Plaintiffs would suffer prejudice if a
15  default is not entered since, without an injunction, Plaintiffs would not be able to enjoin Defendant
16  from continuing to reproduce and distribute copyrighted sound recordings. Nor would Plaintiffs be
17  able to obtain monetary relief to which they are entitled under the Copyright Act. Effectively,
18  Plaintiffs would not have any other recourse for recovery.

19      2.&3.    <u>The Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint</u>

20      The second and third *Eitel* factors "require that a plaintiff state a claim on which the
21  [plaintiff] may recover." *Philip Morris U.S.A., Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494,
22  500 (C.D. Cal. 2003) (internal citations omitted).

23      Plaintiffs allege direct copyright infringement and generally cite to provisions under the
24  Copyright Act. Pl.'s Compl. ¶ 1. Section 501(b) of the Copyright Act deems that "the legal or
25  beneficial owner of an exclusive right under copyright is entitled, subject to requirements of section
26  411, to institute an action for infringement of that particular right committed while he was an owner
27  of it." 17 U.S.C. § 501(b). The 9th Circuit has further required that, in order to establish a *prima*
28  *facie* case of direct infringement, Plaintiffs must satisfy two requirements: (1) they must show

1  ownership of the allegedly infringed material and (2) they must demonstrate that the alleged
2  infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.
3  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001).

    a. <u>Ownership</u>

"With respect to ownership, the copyright registration certificate constitutes *prima facie* evidence in favor of the plaintiff, creating a presumption of ownership." *Elektra Entertainment Group, Inc. v. Bryant*, 2004 U.S. Dist. LEXIS 26700, at *9 (finding ownership when Plaintiffs provided a list of their copyrighted sound recordings which were each the subject of a valid certificate of copyright registration (C.D. Cal. 2004, February 13, 2004)).  Similarly, in the present case, Plaintiffs have not provided the Court with the actual registration certificate.  However, in Exhibit A, they have provided a list of eight copyrighted sound recordings which are all subject to valid certificates of copyright registration.  Salomon Decl., Ex. A.  Furthermore, in the Complaint, Plaintiffs have asserted that each of the copyrighted sounds recordings listed in Exhibit A are subject to a valid Certificate of Copyright Registration.  Pl.'s Compl. ¶ 13.  As such, the Court presumes Plaintiffs' owned the allegedly infringed materials.

However, it is unclear how many of the hundreds of sound recordings listed in Exhibit B are owned by Plaintiffs.  In the Complaint, they allege that they own only "certain of the sound recordings listed on Exhibit B."  *Id*.  Since Plaintiffs did not specifically identify which sound recordings they own, this ambiguity weighs against Plaintiffs' substantive claim regarding the extent of Defendant's alleged copyright infringement.  However, it does not affect the fact that Plaintiffs have clearly identified ownership over at least eight sound recordings that were copyrighted and that Defendant allegedly infringed.

    b. <u>Violations of 17 U.S.C. § 106</u>

Section 106 of the Copyright Act lays out six exclusive rights that belong to copyright owners.[1]  In their Complaint, Plaintiffs allege that Defendant willfully used and continues to use an

---

[1] The owner of the copyright has the exclusive rights: "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and

online media distribution system to download, distribute, and/or make available for distribution Copyrighted Recordings. These alleged acts are in direct violation of the rights of reproduction under Subsection 106(1) and distribution under Subsection 106(3). Given these allegations and the aforementioned ownership of at least eight copyrighted sound recordings, Plaintiffs have adequately stated a claim for copyright infringement.

### 4. Sum of Money at Stake

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris U.S.A., Inc.*, 219 F.R.D. at 500 (internal citations omitted) (noting that defendant's willful infringement of plaintiff's trademarks justified the imposition of a substantial $2 million award). If the sum at stake is completely disproportionate or inappropriate considering Defendant's actions, default judgment is disfavored. *See Board of Trustees of the Cal. Metal Trades v. Pitchometer Propeller*, 984 F.Supp. 978, 978 (N.D. Cal. 1997) (in granting default judgment, noting that "[t]he amount of money at stake is reasonable, properly documented and contractually justified"). As discussed further under "Part E: Damages," *infra*, Plaintiffs seek a total of $6,403.00 in total damages: $750 in minimum statutory damages for each infringement under 17 U.S.C. § 504(c)(1) and $403.00 in costs pursuant to 17 U.S.C. § 505. The overall damage request is tailored specifically to the copyright infringement by Defendant. Plaintiffs are seeking the minimum statutory damages. In addition, Plaintiffs have suffered great harm due to Defendant's alleged piracy. As such, the Court finds the amount of money at stake is reasonable.

### 5. Possibility of a Dispute Concerning Material Facts

If the plaintiff has filed a well-pleaded complaint, alleging facts sufficient to support his claim, and the clerk has entered default, the court presumes there is no dispute over facts. *Elektra Entertainment, Inc. v. Bryant*, 2004 LEXIS 26700, at *5 (C.D. Cal. Feb. 13, 2004) (citing *Televideo*

---

choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture of other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106.

*Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)).  In the instant case, Plaintiffs have adequately stated a claim for copyright infringement, alleging facts sufficient to support the claim, and the Clerk has entered default.  In all likelihood, the act of downloading copyright songs can be documented by objective evidence.  Since Defendant has not made any attempt to challenge Plaintiffs, then the analysis of this factor supports a default judgment.

      6.    <u>Whether the Default was Due to Excusable Neglect</u>

Usually, a court will ask whether the failure to answer is due to excusable neglect.  *See Eitel*, 782 F.2d at 1472 (noting the fact that the parties were engaged in settlement negotiations excused defendant from failing to answer).  In *Webb v. Indigenous Global Dev. Corp.*, this Court found it unlikely that a Defendant's failure to answer and consequently default was a result of excusable neglect when Defendant had been properly served with a summons and complaint, with a request to enter default judgment, and an application for default judgment.  *Webb*, 2005 WL 1200203, at *4.  Similarly, in the instant case,  Defendant was properly served the Summons and Complaint on April 27, 2005, was provided notice of entry of default on July 6, 2005, and the application for default judgment on October 10, 2005.  *See* Summons (Docket No. 4), Certificate of Service (Docket No. 9), Certificate of Service (Docket No. 18).  Given these circumstances, it is unlikely that Defendant's failure to answer and consequently default was a result of excusable neglect.

      7.    <u>The Strong Public Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

Generally, default judgments are disfavored because "cases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, because a discretionary standard is applied, "default judgments are more often granted than denied."  *Pepsico v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  In this case, Plaintiffs have provided notice to Defendant concerning the various stages leading up to this application for entry of default judgment and they have pled relevant facts supporting their copyright infringement claim.  As such, the policy encouraging decisions of cases on their merits does not weigh against granting default judgment.

Based on all the *Eitel* factors discussed above, the Court recommends that Plaintiffs' motion for default judgment be granted.

D.  Remedies

   1.  Statutory Damages

Although the factual contentions of the Complaint must be taken as true, those statements regarding damages are an exception, and a hearing in order to determine damages is authorized by Federal Rule of Civil Procedure 55(b).  While the courts are not obligated to hold such hearings, it may not simply rely on bare assertions of damages; it must ensure the propriety of the damages sought. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 109, 111 (2d Cir. 1997).  The plaintiff must prove up damages.

The Copyright Act provides that "the copyright owner may elect, at any time before judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work...in the sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  A plaintiff can recover statutory damages regardless of adequate evidence of the actual damages suffered or the profits reaped by Defendant. *Columbia Pictures Television, Inc. v. Krypton Broad, of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 1997).

Under the Copyright Act, if the Court finds that Defendant committed the infringement willfully, as Plaintiffs allege in this case, it has the discretion to increase the award to a sum of not more than $150,000.  17 U.S.C. § 504(c)(2).  The Court has great discretion to determine the amount of damages to be awarded within statutory limits. *Elektra Entertainment Group*, 2004 LEXIS 26700, at *19, 20 (citing Nimmer § 14.04[B][3] at 14-55 (Rel. No. 574/02)).

Although Plaintiffs here have alleged willfulness in their Complaint, they seek only the minimum award of statutory damages of $750 for each infringed work.  Pl's Applic. for Entry of Default Judgment at ¶ 4.  Although not expressly mentioned, Plaintiffs appear to be asking for damages for infringement of the eight sound recordings listed in Exhibit A of the Complaint.  They do not appear to seek damages for any copyrighted sound recordings in Exhibit B.  Plaintiffs request a total award of $6,000, an amount which is ascertainable from the Application for Entry of Default Judgment.  These damages are reasonable and appropriate given the finding that at least eight

recordings were illegally downloaded and the need to deter Defendant and others from violating Plaintiffs' rights in the future. As such, the Court recommends that Plaintiffs' award be granted.

### 2. Permanent Injunctive Relief

The Copyright Act authorizes a court to grant injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. 502(a). The four elements for granting a permanent injunction include: (1) irreparable harm; (2) success on the merits; (3) a balancing of competing claims of injury to the parties; and (4) consideration of the public interest. *Sony Music Entm't, Inc. v. Global Arts Prod.* 45 F.Supp. 2d 1345, 1347 (S.D. Fla. 1999) (citing *Warren Pub., Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516 (11th Cir.), *cert. den.*, 522 U.S. 963 118 S. Ct. 397, 139 L. Ed. 2d 311 (1997)). Injunctive relief is a traditional remedy for copyright infringement and is especially favored where there is a history of continuing infringement and a substantial threat of continued infringement. *Id.*

Plaintiffs seek an injunction to enjoin Defendant from reproducing, distributing, or making available for distribution to the public any present and future Copyrighted Recordings owned by Plaintiffs and/or their affiliate record labels. Plaintiffs further request that Defendant destroy all copies of Plaintiffs' Copyrighted Recordings that he has downloaded or transferred onto any computer hard drive, server, physical medium, or device without Plaintiffs' authorization. Pl.'s Compl. ¶ 18.

Plaintiffs allege that Defendant's conduct is causing irreparable injury that cannot fully be compensated or measured in money, and that they will continue to suffer such an injury unless the Court enjoins Defendant from continuing to infringe Plaintiffs' copyrights. Pl.'s Compl. ¶ 18. Copyright infringement is presumed to give rise to irreparable injury. *Elektra Entm't Group*, 2004 LEXIS 26700, at *17 (citing *A&M Records v. Napster*, 114 F.Supp. 2d 896, 925 (N.D. Cal. 2000)). Hence, when seeking a permanent injunction in copyright cases, irreparable harm is presumed on a showing of success on the merits. *Id.* at *17-18 (citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1109; *Sony Music Entm't*, 45 F.Supp. 2d at 1347). In addition, given the default on the merits, Plaintiffs have established success on the merits. *Id.* (citing *Caribbean Produce Exchange v. Caribe Hydro-Trailer, Inc.*, 65 F.R.D. 46, 48 (D.P.R. 1974)).

1   An analysis of the third and fourth elements also weighs in Plaintiffs' favor of granting an injunction. Plaintiffs claim that damages could not adequately compensate them for the harm caused by Defendant's widespread infringements. Pl's Applic. for Entry of Default Judgment at 7: 3-5. There is no question that any piracy committed by Defendant results in monetary injury to Plaintiffs. In fact, the extent of this injury is difficult, if not impossible, to measure especially given the means of infringement -- an online distribution system with millions of potential users who can further unlawfully distribute sound recordings. Such an infringement leaves Plaintiffs "vulnerable to massive, repeated, near-instantaneous, and worldwide infringement." *Elektra Entm't Group*, 2004 LEXIS 26700, at *19, 20. In addition, the public interest factor also favors an injunction. Record piracy is reportedly a multi-billion dollar-a-year "industry" worldwide which can keep companies from reaping financial rewards and cause record labels to increase wholesale prices of compact discs and prevent companies from taking a risk on records in the future. *Sony Music Entm't, Inc.*, 45 F. Supp. 2d at 1348. Conversely, there is no obvious injury to a protectible interest suffered by Defendant if Defendant is ordered not to unlawfully reproduce, distribute, or make available for distribution to the public the Plaintiffs' Copyrighted Recordings and to destroy those which were illegally downloaded.[2]

Given the aforementioned reasons and the fact that there is no evidence that Defendant will not continue to infringe Plaintiffs' recordings, a permanent injunction is warranted.

3.   Costs

The Copyright Act gives the Court the discretion to allow recovery of full costs. 17 U.S.C. § 505. Plaintiffs seek reimbursement of costs in the amount of $403.00 without any documentation to show why they are entitled to these costs. *See* Salomon Decl. ¶ 6. In this District, a prevailing party may recover the Clerk's filing fee "if paid by the claimant" and fees for service of process "to the extent reasonable required and actually incurred." Civ. L.R. 54-3(a)(1). Hence, it is reasonable for the Court to infer that $250.00 was spent for these purposes and this amount should be awarded. (Docket No. 1 (indicating receipt of filing fee upon filing complaint)). If Plaintiffs would like to

---

[2] The injunction requested by Plaintiffs does not specify that the distribution, reproduction, or download be unlawful. To be enjoined, they must be.

1 recover the remaining $153.00, then they must provide documentation detailing how the costs were
2 incurred.

### III. CONCLUSION

For the foregoing reasons, this Court recommends that Plaintiffs' motion for default judgment and request for permanent injunction against Defendant be granted.  Plaintiffs should be awarded $6,000 in statutory damages for copyright infringement and $250.00 in costs.  Defendant should be permanently enjoined from unlawfully reproducing, distributing, or making available for distribution any present and future Copyrighted Recordings owned by Plaintiffs and/or their affiliate record labels.  Defendant should be further ordered to destroy all copies of Plaintiffs' Copyrighted Recordings that he has unlawfully downloaded and transferred onto any computer hard drive, server, physical medium, or device.

Dated: March 21, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge